**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ALJ HILTON,                                           :

    Petitioner,                                  :
                                                      CIVIL ACTION NO. 19-0327-WS-MU
                                                      :
vs.                                                   CRIMINAL NO. 17-00165-WS
                                                      :
UNITED STATES OF AMERICA,
                                                      :
    Respondent.


## REPORT AND RECOMMENDATION

This cause is before the undersigned on Petitioner Alj Hilton's motion to vacate,

set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 47), the

government's response in opposition (Doc. 50), and Petitioner's reply (Doc. 51).[1] This

---

[1]     On January 19, 2021, Petitioner requested leave to file a supplemental pleading. (Doc. 52).  The undersigned extended to Petitioner a period up to and including March 15, 2021, to file a supplemental pleading limited solely to a discussion of the effect of *Garza v. Idaho,* 139 S.Ct. 738, 203 L.Ed.2d 77 (2019), and any cases decided in the wake of *Garza,* on his claim of ineffective assistance of counsel. (Doc. 53). This Court received no supplemental pleading from Petitioner. (*See* Docket Sheet).

    The failure of Hilton to file a supplemental pleading is understandable. It is understandable because *Garza*, which extended the presumption of prejudice, first recognized in *Roe v. Flores-Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) when an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, to those situations in which the defendant, in pleading guilty, has signed an appeal waiver. 139 S.Ct. at 742. The problem here, of course, and why *Garza* has no application to Hilton's case is because counsel not only filed a notice of appeal in this case (*see* Doc. 33) but, as well, appellate counsel was appointed to represent Hilton and he raised several issues in that direct appeal (*see, e.g.,* Doc. 50-1, PageID. 240 (Statement of Issues were identified as: "Whether the district court erred in denying Appellant's objection to the imposition of two levels at sentencing pursuant to U.S.S.G. §2D1.1(b)(1)? [and] Whether the district court erred in refusing to credit Appellant three levels for acceptance of responsibility at sentencing pursuant to U.S.S.G. §3E1.1?")).

action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). Following consideration of all relevant pleadings in this case, it is recommended that Hilton's § 2255 motion be **DENIED/DISMISSED** without an evidentiary hearing, because "'it plainly appears from the face of the motion and [the] annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief[.]'" *Broadwater v. United States,* 292 F.3d 1302, 1303 (11th Cir. 2002) (citation omitted); *see also Rosin v. United States,* 786 F.3d 873, 878 (11th Cir.) ("It is well-settled that the district court is not required to grant an evidentiary hearing when the defendant's claims are affirmatively contradicted by the record evidence, nor is a hearing required if the claims are grounded upon generalizations that are unsupported by the record evidence."), *cert. denied,* 577 U.S. 959, 136 S.Ct. 429, 193 L.Ed.2d 320 (2015).

### <u>FINDINGS OF FACT</u>

On July 27, 2017, Alj Hilton was indicted on one count of possession with intent to distribute 453.4 grams of methamphetamine (actual) in violation of 21 U.S.C. § 841(a)(1). (Doc. 1, PageID. 1). And because the quantity of methamphetamine involved in the offense exceeded 50 grams, Hilton was advised that he was subject to the penalty provisions in 21 U.S.C. § 841(b)(1)(A). (*Id.*).[2] Following Hilton's initial appearance in court (*see* Doc. 6), he was released on conditions on September 28,

---

[2]    Section 841(b)(1)(A) sets forth a special statutory penalty provision for certain violations of § 841(a) and  provides, in relevant measure, that in the case of a violation of subsection (a) involving 50 grams or more of methamphetamine (actual), "such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life[.]" 21 U.S.C. § 841(b)(1)(A)(viii).

2017 (*see* Doc. 7, PageID. 19 (listing numerous conditions, including that "[t]he defendant shall not commit any offense in violation of federal, state or local law while on release in this action")).

On November 16, 2017, Hilton entered a counseled guilty plea to the sole count of the indictment (*see* Doc. 40), pursuant to a plea agreement (*see* Doc. 20). As relevant here, the plea agreement included a waiver of the right to appeal or file a motion to vacate, under 28 U.S.C. § 2255, except under certain circumstances. (Doc. 20, PageID. 75-76). Hilton "knowingly and voluntarily waive[d] the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255[,]" ***except*** that he retained/reserved the right to timely file a direct appeal challenging any sentence imposed in excess of the statutory maximum or any sentence constituting an upward departure or variance from the advisory guideline range ***and*** he retained/reserved the right to assert a claim of ineffective assistance of counsel in a direct appeal or in a § 2255 motion. (*Id.*).[3] During

---

[3]    In pleading guilty, Hilton specifically stated his understanding that by signing his plea agreement, he was acknowledging he had received a copy of it, had an opportunity to read it and review it with his attorney, and that he fully understood the terms and conditions of the plea agreement and the factual resume. (Doc. 40, PageID. 147). As well, Hilton specifically stated that he understood the following: "The Court will not be able to determine an appropriate sentence for your case until after a presentence report has been completed and you and the United States have had an opportunity to challenge the facts reported by the probation office. The sentence imposed might be different from any estimate your attorney or anyone else might have given you." (*Id.,* PageID. 150; *see also* Doc. 20, PageID. 68-69 (plea agreement makes clear the same information the court imparted to Hilton during his guilty plea proceeding)). The sole obligation of the United States under the plea agreement respecting Hilton's sentence was that it would "recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range per count of conviction ***as determined by the Court***." (*Id.,* PageID. 70) (emphasis supplied). In other words, once the Court made all findings necessarily attendant to determining the sentencing guideline range, the Government would recommend a low-end sentence. (*See id.*).

his guilty plea proceeding on November 16, 2017, Hilton acknowledged his understanding of this waiver provision. (Doc. 40, PageID. 151 (Hilton stated he understood that, pursuant to his plea agreement, he was waiving his right to appeal his conviction and sentence, "either by filing a direct appeal or collateral appeal with the following limited exceptions: That would be any punishment in excess of the statutory maximum; any punishment constituting an upward departure of the guideline range; and any claim of ineffective assistance of counsel.")).

At the tail end of Hilton's guilty plea, the Court advised him that he would remain on the same conditions of release as previously imposed (*id.,* PageID. 159-60) and Hilton told the Court that he understood those conditions (*see id.,* PageID. 160). The draft presentence investigation report ("PSR") produced by the Probation Office on February 7, 2018, was written with an eye toward Hilton receiving an offense-level decrease (by some three levels) for acceptance of responsibility (*see* Doc. 22, PageID. 83 & 84) but also reflected a two-level increase (from his base offense level) due to a dangerous weapon being possessed by a purported co-conspirator (*see id.,* PageID. 84).[4] So, when Hilton's attorney filed his written objections to the PSR on February 27, 2018, he only objected "to the two-point offense level increase" in paragraph 15 of the report (Doc. 25, PageID. 99 (arguing "Defendant was not in possession of a weapon,

---

[4] The undersigned has purposely used the modifier "purported" because the record makes clear, inclusive of the comments of defense counsel and the Assistant United States Attorney during the sentencing proceeding, that the passenger in Hilton's vehicle (when Petitioner was arrested on the charges made the basis of this case) was not named as a co-defendant and was not a co-conspirator in the sense that Hilton was never charged with conspiracy with intent to distribute methamphetamine.

nor had knowledge of same.")) and followed-up with arguing that the sustaining of this objection would result in an "offense level of 29" and, given Hilton's criminal history category of IV, a guidelines range of punishment of 121-155 months (*see id.*).

On February 28, 2018, Hilton's probation officer, Jacob Price, filed a petition for action on conditions of release after receiving information that Hilton had been arrested and charged on February 22, 2018 in D'Iberville, Mississippi with second-degree DUI, careless driving, obstructing a public highway, and disorderly conduct. (*See* Doc. 26, PageID. 103 (Hilton also admitted to consuming alcohol to the arresting officer, he traveled outside Idaho without permission, and he failed to report his contact with Mississippi law enforcement to the U.S. Probation Office within 24 hours)). On March 1, 2018, an arrest warrant was issued for Hilton based upon his violations of his conditions of release. (Doc. 27, PageID. 105).

Based on the Hilton's violations of his release conditions, the Probation Office filed its revised final PSR on March 7, 2018, which continued to reflect the two-level increase for possession of a dangerous weapon by a purported co-conspirator (Doc. 28, PageID. 110)[5] and also reflected that Hilton was due no decreases (in offense levels)

---

[5]     The PSR details the following facts:

5.      On February 20, 2017, MCSENT Officer Brian Smith was contacted by a Confidential Informant (CI) who advised that he/she had made several unrecorded phone calls with an individual in Mississippi named **Alj Hilton.** The CI had arranged for **Hilton** to deliver him/her one pound of methamphetamine later that same day.

6.      Hilton and the CI continued to communicate over the course of the day, and law enforcement set[] up an undercover position in the Tillman's Corner area of Mobile, where the CI and **Hilton**

(Continued)

because he had failed to demonstrate acceptance of responsibility for the offense (*see id.*, PageID. 110).[6] On March 8, 2018, Hilton was arrested for violating the conditions of

---

> agreed to meet. During their surveillance, officers observed **Hilton** and another male, later identified as Arthur Burney, standing near **Hilton's** vehicle in the parking lot of an auto parts store. After receiving confirmation from the CI that **Hilton** was entering the CI's vehicle, officers converged on the area, and **Hilton** was taken into custody without incident. Officers then noticed that Burney was no longer at **Hilton's** vehicle. Officers entered the store, and observed Burney walk to an end cap and toss a gun into the display. Burney was subsequently taken into custody and officers recovered a .32-caliber Beretta pistol.
>
> 7.    A search of **Hilton's** vehicle revealed 453.4 grams of methamphetamine (actual). After recovering the methamphetamine, **Hilton** was read his *Miranda* rights, and agreed to speak with officers. **Hilton** confirmed that he and Burney had traveled together from Mississippi, but declined to make any further statement.

(Doc. 28, PageID. 108-109; *see also* Doc. 29, PageID. 121 ("Pursuant to U.S.S.G. §2D1.1, Commentary, Application Note 11(A), 'The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense.' In this case, Hilton and his co-conspirator traveled to the Mobile area for the sole purpose of selling methamphetamine actual. Therefore, it would be reasonably foreseeable to Hilton that his co-conspirator might be in possession of a weapon during a drug transaction. For these reasons, the report remains unchanged.")).

[6]    The PSR contains the following relevant information regarding acceptance of responsibility:

> 11.    The defendant has entered a guilty plea and professed his guilt before the Court. He has also executed a Factual Resume, acknowledging his involvement in the offense.
>
> 12.    During the presentence interview, Hilton stated that he is "sorry."
>
> 13.    Although the defendant has verbally exhibited acceptance of responsibility, he is not entitled to an adjustment, pursuant to U.S.S.G. §3E1.1, as evidenced by his arrest for

(Continued)

his release (Doc. 31) and, on March 9, 2018, his bond was revoked, following a hearing, and he was remanded to the custody of the United States Marshal (Doc. 32).

Hilton's sentencing was conducted on March 15, 2018. (Doc. 41).  During the course of sentencing, defense counsel interposed specific objection to the two-level increase for possession of a firearm and, as well, objected to the probation officer taking away acceptance of responsibility points in the March, 2018 PSR. (*See id.,* PageID. 164-66).

> MR. WALSH: . . . [T]wo points . . . .
>
> One, Your Honor, the original Paragraph 15, there was a two-point increase for possession of a firearm during a drug crime. . . . [A]s I stated in our position, defendant was not in possession of the gun. Nowhere in the discovery is he in possession of the gun. In fact, the gun was attributed to the passenger of his car who apparently went into O'Reilly Auto Parts Store and left it –it is a pistol[--] . . . on a shelf or somewhere.
>
> There's no indication that my client knew the man had a gun. It's not a long rifle, a shotgun, anything like that where it would be obvious that he would have a weapon on him. And nowhere . . . has Mr. Hilton claimed that he had knowledge of that gun.
>
> The only thing that really the report says or the addendum to it is that . . . in drug crimes, it's assumed somebody has a weapon. Well, I mean, I could say that – anything in Alabama or Mississippi that may be – probably someone in a room has a weapon on them. It . . . shouldn't make it relevant conduct . . . for Mr. Hilton just simply because someone he is with had a weapon he had no knowledge of.
>
> Now, I have one other objection but it was to the recent final recalculation, Judge. The range of punishment in this most recent probation officer's report of March 15 jumped that range of punishment

---

incurring new criminal charges and failure to comply with conditions ordered by the Court.

(Doc. 28, PageID. 109).

from 210 to 262 months and that is because the probation office is taking away the acceptance of responsibility points.

Mr. Hilton did accept responsibility for the crime that we're here on today. He did step up. Understands what he has done. Understood his guilt and what it means to accept responsibility; however, he did get arrested . . . a couple of weeks ago for a DUI in Mississippi. Not good, obviously. Not good. He's not supposed to be arrested for anything, have any contact with law enforcement. But . . . it doesn't have anything to do with accepting responsibility for the crime at hand. He wasn't busted for drugs. He hasn't failed drug tests.

In fact, he's been working for a company for a long time called Fire PG . . . – they put in fire protection in buildings. And they know about these cases. And they've taken him to Iowa, Washington State, Oregon, Tennessee, and Colorado, knowing that he's got these charges out here. He is a good worker. And I would say that he certainly accepted responsibility for his actions and . . . kept himself working legitimately throughout the course of this.

(*Id.*). After hearing from the Government (*see id.,* PageID. 168-70),[7] the Court overruled defense counsel's objections (*id.,* PageID. 170-71), finding the two-level increase was appropriate because it was not clearly improbable that the weapon was connected to the offense given it was reasonably foreseeable to Hilton that the weapon was present (*see id.,* PageID. 170) and finding that Hilton's "actions in getting arrested [for DUI, etc., in contravention to his conditions of release] and bringing himself into a position where he has now to defend multiple charges for his indiscretions indicates to the Court that he has failed to qualify for the acceptance of responsibility adjustment." (*Id.,* PageID. 171). Thereafter, the Court sentenced Hilton to a term of 210 months imprisonment. (*Id.,*

---

[7] With respect to the acceptance of responsibility points, the Assistant United States Attorney simply noted that he believed that the probation officer could "rightly deny the acceptance[]" but that he would leave the determination regarding whether Hilton received the three points to the Court's discretion. (*See id.,* PageID. 169-70).

PageID. 174; *see also id.,* PageID. 172-73). Hilton filed written notice of appeal on March 16, 2018 (Doc. 33) and four days later, on March 20, 2018, the Court entered its judgment (Doc. 37).

Hilton's trial attorney, Tom Walsh, was allowed to withdraw (*see* Doc. 35) and Robert Ratliff was appointed to represent Hilton on appeal (*see id.*). In Hilton's opening brief on appeal, Ratliff raised the following issues: "Whether the district court erred in denying Appellant's objection to the imposition of two levels at sentencing pursuant to U.S.S.G. §2D1.1(b)(1)? [and] Whether the district court erred in refusing to credit Appellant three levels for acceptance of responsibility at sentencing pursuant to U.S.S.G. §3E1.1?" (Doc. 50-1, PageID. 240). The Government's response was the filing of a motion to dismiss Hilton's appeal pursuant to the appeal waiver contained in Hilton's plea agreement. (Doc. 50-2, PageID. 256-262). In replying to the Government's motion to dismiss, appellate counsel urged the Eleventh Circuit to find the appeal waiver unenforceable and deny the motion to dismiss. (Doc. 50-3, PageID. 333; *see also id.,* PageID. 323-332).

On July 18, 2018, a three-judge panel of the Eleventh Circuit entered an unpublished per curiam opinion granting the Government's "motion to dismiss this appeal pursuant to the appeal waiver in [Hilton's] plea agreement[.]" (Doc. 45, PageID. 195; *see also id.,* PageID. 195-96 (citing *United States v. Bushert,* 997 F.2d 1343, 1350-51 (11th Cir. 1993) for the proposition that a "sentence appeal waiver will be enforced if it was made knowingly and voluntarily")). The foregoing opinion of the Eleventh Circuit was issued as mandate on August 16, 2018. (Doc. 46, PageID. 199).

On June 26, 2019, Hilton filed his motion to vacate, pursuant to 28 U.S.C. § 2255, in this Court. (Doc. 47, PageID. 216 (Hilton's certification that he placed his motion to vacate in the prison mailing system on June 26, 2019)).  Therein, Hilton raises the following claims: (1) the Government did not offer any evidence demonstrating that he was not entitled to three points for acceptance of responsibility and, therefore, breached the plea agreement by not informing the Court that he was entitled to the three points (*see id.,* PageID. 203-04); (2) the Court erred in applying the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) because no co-defendant existed (*id.,* PageID. 204-06); (3) his trial attorney was constitutionally ineffective for not raising a plain error argument under Rule 52(b) to the two-level enhancement by the Court under § 2D1.1(b)(1) of the sentencing guidelines (*id.,* PageID. 206-09); and (4) he did not waive his right to appeal his conviction and challenge the constitutionality of the statute (21 U.S.C. § 841(a)(1)) to which he pled guilty (*see id.,* PageID. 209-11). In its response in opposition, the government stakes the position that Hilton's motion should be dismissed/denied because his challenges to his sentence are barred by the appellate waiver in his plea agreement; he cannot establish a viable ineffective assistance of counsel claim; and § 841(a)(1) is not unconstitutional. (*See* Doc. 50, PageID. 226-31). In reply, Hilton principally takes aim at the Government's argument that he has not established a claim of ineffective assistance of trial counsel, arguing that his trial attorney failed to object/dispute the central facts of the PSI and did not "forcefully argue that it was clearly improbable that the firearm apparently concealed on the person of petitioner's passenger and subsequently discarded [] was connected to the

methamphetamine distribution offense for which [he] was arrested[.]" (Doc. 51, PageID. 338). Based upon these purported failures, Petitioner contends that his trial attorney was constitutionally ineffective because he allowed his client to be given a two-level enhancement based on a PSI containing inaccurate information. (*See id.*).

## CONCLUSIONS OF LAW

**A.** **Legal Standard.** Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Thus, as the language of § 2255(a) makes clear, "the grounds for collateral attack on a final judgment . . . are limited[,]" *Gayle v. United States,* 2020 WL 4339359, *3 (S.D. Fla. July 28, 2020) and are "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States,* 365 F.3d 1225, 1232 (11th Cir.) (citations and internal quotation marks omitted), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

**B.** **The Challenges Petitioner Raises in his Motion to Vacate Directed to his Sentence are Barred by the Appellate/Collateral Attack Waiver in his Plea Agreement.** Besides his ineffective assistance of trial counsel claim, Hilton's principal

11

claims in his motion to vacate relate to sentencing errors made by the Court, namely that the Court erred in applying the two-level enhancement in § 2D1.1(b)(1) and by denying him acceptance of responsibility. (*See* Doc. 47, PageID. 203-06). These are the same sentencing challenges Hilton raised on direct appeal (*see* Doc. 50-1, PageID. 240); as set forth above, the Eleventh Circuit dismissed Hilton's appeal (that is, specifically the two sentencing issues he raised) pursuant to the appeal waiver contained in his plea agreement (*see* Doc. 45, PageID. 195).[8]  In light of the Eleventh Circuit's decision, Hilton cannot now re-litigate the effectiveness of the sentence appeal waiver provision in the instant collateral attack. *Cf. United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000) (recognizing that "'[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.'"), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 892, 148 L.Ed.2d 799 (2001).

In addition, these sentencing challenges are barred by the collateral attack waiver contained in Hilton's plea agreement.

---

[8]    To the extent Hilton has "modified" his acceptance of responsibility issue as more of an attack on the Government's purported breach of the plea agreement, at bottom his attack remains that he was denied acceptance of responsibility and, as a result, received a lengthier sentence than he otherwise would have received had he been granted acceptance of responsibility. In other words, despite how Hilton may couch his attack, it remains an attack on his sentencing and, as a sentencing attack, it is still subject to the appellate/collateral attack waiver in his plea agreement. Besides, Hilton has simply not established that the Government breached the plea agreement, there being no provision requiring the Government to exhort the Court under all circumstances to grant him acceptance of responsibility. Indeed, the only substantive requirement was for the Government to recommend a low-end guidelines sentence once the Court calculated the sentencing guidelines (*See* Doc. 20, PageID. 70) and the Government "met" this "provision" of the agreement when they recommended that Hilton be sentence to 210 months' imprisonment, the low-end of his guidelines range of 210 to 262 months' imprisonment (*compare id. with* Doc. 41, PageID. 172).

A collateral attack waiver will be enforced if it was made knowingly and voluntarily. <u>United States v. Bushert</u>, 997 F.2d 1343, 1351 (11th Cir. 1993). To establish that the waiver was made knowingly and voluntarily, the government must show either that (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. . . .

A valid collateral attack waiver applies to difficult or debatable issues of law and even blatant error. <u>United States v. Grinard-Henry</u>, 399 F.3d 1294, 1296 (11th Cir. 2005). A defendant may even waive constitutional issues by executing a valid collateral attack waiver, including an Eighth Amendment claim that a sentence was cruel and unusual due to its length. <u>United States v. Bascomb</u>, 451 F.3d 1292, 1297 (11th Cir. 2006).

*Kellogg v. United States,* 2021 WL 3917003, \*3 (N.D. Ga. July 23, 2021), *report and recommendation adopted,* 2021 WL 3913128 (N.D. Ga. Sept. 1, 2021). Here, the record establishes that Hilton waived his collateral attack rights voluntarily and knowingly. Hilton not only executed the plea agreement containing the collateral attack (and appellate) waiver, specifically acknowledging that he had read and reviewed every part of the agreement with his attorney (*see* Doc. 20, PageID. 77), but also testified under oath at the guilty plea proceeding that he understood he was waiving his appellate rights (both direct and collateral) when the Court questioned him about this specific provision of the plea agreement (*see* Doc. 40, PageID. 151). Given that "[c]ourts apply a 'strong presumption' that statements made by a defendant during the plea colloquy are true[,]" *Kellogg, supra,* at \*3, citing *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994), the Court finds that the government has demonstrated that the record shows Hilton understood the full import of the collateral attack/appellate waiver and that he entered it knowingly and voluntarily, *see id.* Accordingly, the undersigned recommends

that the Court find that Hilton's challenges to his sentence, as well as his cursory and

conclusory constitutional attack on § 841(a)(1) (*see* Doc. 47, PageID. 209-10),[9] be

dismissed pursuant to the collateral attack waiver in his plea agreement because none

of these claims fall within the single exception in the waiver provision (that is, none of

these claims constitute a claim of ineffective assistance of counsel, which is the only

exception set forth in the collateral attack waiver). *See Kellogg, supra* (finding "the

single exception in the waiver provision does not apply to Movant's claims that his due

process rights were violated in his prior § 2255 proceedings and that the government

breached the plea agreement by failing to recommend a low-end guideline sentence.").

    **C.**    **Ineffective Assistance of Trial Counsel**. The sole exception in the

collateral attack waiver covers claims of ineffective assistance of counsel (*see* Doc. 20,

PageID. 76); therefore, the undersigned turns his focus to Hilton's single claim of

ineffective assistance of counsel. Hilton claims that his trial attorney was constitutionally

ineffective in failing to interpose what Hilton now believes would be the argument to

persuade the Court not to apply the two-point enhancement under U.S.S.G. §

2D1.1(b)(1), necessarily focusing on the passenger in his vehicle not being a co-

defendant (or co-conspirator) and forcefully arguing that it was clearly improbable that

---

[9]     Although the undersigned finds it impossible to follow Hilton's logic on how § 841(a)(1) is unconstitutional (*see id.*), it bears noting, as did the Government (Doc. 50, PageID. 231), that the Eleventh Circuit has consistently rejected constitutional challenges to this statute. *See, e.g., United States v. Underwood,* 446 F.3d 1340, 1344-45 (11th Cir.) (rejecting argument that 21 U.S.C. § 841 in unconstitutional in light of the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)), *cert. denied,* 549 U.S. 903, 127 S.Ct. 225, 166 L.Ed.2d 179 (2006); *United States v. Perry,* 480 F.2d 147, 149 (5th Cir. 1973) ("The statute under which defendant was convicted, 21 U.S.C. § 841(a)(1), is not unconstitutional. As contended by defendant[.]").

the firearm (concealed by the passenger and subsequently discarded by the passenger in the O'Reilly Auto Parts Store) was connected to the methamphetamine distribution offense for which petitioner was arrested (and convicted). (*See* Doc. 51, PageID. 338).

To establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense."). "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States,* 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[10]

---

[10]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States,* 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, (Continued)

The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[11] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Dep't of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome

---

209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

[11]    To satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

that presumption if the challenged conduct might be considered sound trial strategy. . . .  Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted); *see also Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." (citations omitted)), *cert. denied,* 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385

(2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

Again, Petitioner's sole claim of ineffective assistance of counsel is that his trial attorney was constitutionally deficient in failing to interpose a more "meritorious" objection to the 2-level enhancement under § 2D1.1(b)(1). It suffices to counter this argument that trial counsel was not constitutionally deficient because Mr. Walsh objected to the two-level enhancement under § 2D1.1(b)(1) both in written objections submitted before the sentencing hearing (Doc. 25, PageID. 99 (arguing "Defendant was not in possession of a weapon, nor had knowledge of same.")) and during the sentencing hearing (Doc. 41, PageID. 164-65), specifically arguing that Hilton did not possess the gun and that possession of the gun was attributed instead to a passenger in his vehicle with there being no evidence to suggest that Hilton knew the passenger had a gun (*see id.*). Therefore, given that trial counsel did object to the two-level enhancement imposed in accordance with U.S.S.G. § 2D1.1(b)(1) and Hilton has made no showing whatsoever that no competent attorney would have similarly objected to this enhancement as did Mr. Walsh in this case,[12] *see Hall, supra,* 611 F.3d at 1290 (recognizing that in order to satisfy *Strickland*'s first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take"),

---

[12]    In the undersigned's opinion, Walsh made the exact attack Hilton now claims should have been made; he simply used different language than Petitioner now would have preferred and, according to Hilton, was not very forceful. Choice of language and tone, however, simply are not matters upon which to base a finding of constitutionally ineffective performance.

Petitioner is unable to satisfy *Strickland*'s first prong. *Cf. Pair, supra,* 373 Fed.Appx. at 982 ("[J]udicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable."). Accordingly, this claim is properly denied because it has no merit.

**D.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2).  Here, Hilton's habeas petition is being denied partially on the merits, such that a COA should issue only when the Petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see also id.* at 483-484, 120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"), and, as well, on procedural grounds, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). Therefore, with respect to Hilton's single ineffective assistance of trial counsel claim, it is recommended that the Court find that reasonable jurists could not debate whether his § 2255 habeas petition should be resolved in a different manner or that the issue presented is adequate to deserve encouragement to proceed further. Moreover, given that the collateral attack/appellate waiver in Hilton's plea agreement bars his challenges to his sentence (and his purported challenge to the constitutionality of 21 U.S.C. § 841(a)(1)), a reasonable jurist could not conclude that this Court is in error for summarily dismissing Hilton's motion to vacate (with respect to these claims), nor could a reasonable jurist conclude that petitioner should be allowed to proceed further with respect to these claims. *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a

plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). Accordingly, petitioner is not entitled to a certificate of appealability.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-00165-WS-C, Doc. 14 (order from Eleventh Circuit denying petitioner a certificate of appealability in a case in which this exact procedure was outlined in the report and recommendation); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion, based on the foregoing discussion, that Petitioner's motion to vacate, set aside or correct his sentence (Doc. 47) should be **DENIED/DISMISSED** and this case dismissed with prejudice. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate

Judge is not specific.

 **DONE** this the 28th day of September, 2021.

 _s/P. Bradley Murray_____
 **UNITED STATES MAGISTRATE JUDGE**